IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| James G. Bearfield, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.  3:06-cv-80 |
| ) | |
| ) | |
| Soo Line Railroad Company, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff James Bearfield filed this action under the Federal Employers Liability Act (FELA), asserting a classic FELA negligence claim as well as a strict liability claim under the Locomotive Inspection Act (LIA).[1] Defendant Soo Line Railroad Company denies liability in its answer and asserts the defense of contributory negligence. Plaintiff has moved for partial summary judgment, seeking a ruling that defendant violated the Locomotive Inspection Act and is consequently strictly liable for his injuries. He also asks the court to preclude defendant from claiming contributory negligence and to give the jury a peremptory instruction that Soo Line violated the LIA. Defendant has cross-moved for partial summary judgment, seeking a ruling that the Locomotive Inspection Act does not apply to this case. The court held oral arguments on the motions on January 22, 2008, and took the motions under advisement.

**Factual Background**

The parties do not dispute the following facts for purposes of the summary judgment

---

[1]Plaintiff also asserted in his complaint a claim under the Federal Safety Appliance Act, but he no longer pursues that claim.

motions. James Bearfield was injured on February 23, 2004, while working as an engineer at Soo Line's Enderlin, North Dakota, yard. At the beginning of his shift, Bearfield and the conductor from his crew, Duane Steedsman, began assembling a train for their run to Harvey, North Dakota. Bearfield moved the lead locomotive in position to connect to another locomotive. The locomotives were located on a yard track, not the main track from which the train would depart the Enderlin yard. Steedsman coupled two locomotives together, including the air hoses. The operating crew had not yet attached any cars to the locomotives. After coupling the locomotives, Steedsman walked to the depot to get the train assembly list. Bearfield at that point began performing his daily inspection duties, which included looking at the air hoses. While checking the hoses, Bearfield heard air leaking and placed his left hand over the hoses to see if he could determine which hose was leaking. As his hand was poised over the main reservoir hose, the hose blew apart and struck him in the left hand, causing the injuries he alleges.

      Duane Steedsman testified the hoses were properly coupled, as far as he "could tell." Deposition of Duane Steedsman, Doc. 23-2, at 57. After the incident, a car foreman inspected the air hoses and changed the gaskets in the main reservoir hose because they were worn. Deposition of Gil Steedsman, Doc. 32-2, at 21. Plaintiff contends the conductor properly coupled the hoses, and the worn gaskets caused the hose to blow apart and cause his injury. Soo Line has presented an expert witness opinion that "[a] worn main reservoir gasket does not mean the train air brakes are not safe and suitable" . . . , and the air leak was "not large enough to affect the safe departure of the train in that condition." Expert Witness Report of H.T. Paton, Doc. 32-4, at 5.

## The Parties' Positions

FELA claims generally involve allegations of negligence by the railroad, with the employee's recovery diminished "in proportion to the amount of negligence attributable to such employee." 45 U.S.C. § 53. In circumstances where the railroad has violated "any statute enacted for the safety of employees" and that violation has "contributed to the injury or death of [the] employee," the FELA provides that the employee will not "be held to have been guilty of contributory negligence." Id. The LIA constitutes such a safety statute. Plaintiff seeks a ruling that Soo Line violated the LIA by failing to provide locomotives "in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701. Such a ruling would result in strict liability of Soo Line for Bearfield's injuries and elimination of Soo Line's defense of contributory negligence.

Soo Line contends in its motion that the LIA does not apply in this case because the locomotives were "not in use" at the time of Bearfield's injury. If the LIA does not apply, the court must dismiss the LIA claim, and plaintiff must rely on a classic FELA negligence claim.

## Summary Judgment Standard

Summary judgment is appropriate if there is not a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment . . . against a party failing to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex, 477 U.S. at 322. If the moving party has supported its motion for summary judgment, the nonmoving party has an affirmative burden placed on it to go beyond the pleadings and show a genuine triable issue of

fact.  Commercial Union Ins. Co. v. Schmidt, 967 F.2d 270, 271 (8th Cir. 1992).  However, the court considering a motion for summary judgment must view the evidence in the light most favorable to the nonmoving party who enjoys "the benefit of all reasonable inferences to be drawn from the facts."  Vacca v. Viacom Broadcasting of Missouri, Inc. Et al., 875 F.2d 1337, 1339 (8th Cir. 1989) (citation omitted).

Summary judgment is improper if the court finds a genuine issue of material fact; however, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." Commercial Union Insurance Co. v. Schmidt, 967 F.2d 270, 271-72 (8th Cir. 1992) (citation omitted).  The issue is whether "the evidence is sufficient to allow a reasonable jury to return a verdict for the nonmoving party."  Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624 (8th Cir. 1995).

**Were the lococmotives "in use"?**

The LIA imposes liability against a railroad only if a locomotive was "in use" at the time of the incident.  Steer v. Burlington Northern, Inc., 720 F.2d 975, 976 (8th Cir. 1983).  The statute forbids a railroad

> to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances, thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender and all parts and appurtenances thereof have been inspected....

45 U.S.C. § 23.  The court must decide the "in use" issue as a matter of law; it may not submit the question to the jury as an issue of fact.  McGrath v. Consolidated Rail Corp., 136 F.3d 838, 842 (1st Cir.1998);  Steer, 720 F.2d at 977n.4.

The "in use" limitation gives the railroad an opportunity to inspect a locomotive and

remedy any defects before strict liability is triggered under the LIA. Phillips v. CSX Transp, Inc., 190 F.3d 285, 288 (4th Cir. 1999). The Eighth Circuit it has ruled that "[l]ocomotives being serviced in a place of repair are not 'in use' within the meaning of the Boiler Inspection Act [the precursor to the Locomotive Inspection Act]." Steer, 720 F.2d at 976n.3. On the other hand, the Fourth Circuit held in Angell v. Chesapeake & Ohio Ry. Co., 618 F.2d 260 (4th Cir. 1980), that "[a]lthough an engine may not actually be engaged in moving interstate commerce, the intent of the statute is to exclude from its coverage only such functions as are necessary to detect and correct those defective conditions for which absolute liability will be imposed." Id. At 262. Many of the cases presenting the "in use" issue have involved neither a locomotive in a repair or maintenance facility, when it is clearly not in use, nor a locomotive moving along the main track on its intended route, when it is clearly in use. Instead, like this case, the litigated situations often have involved injuries occurring during the pre-departure activities of the operating crew, when the locomotive is situated on a yard track where trains are assembled before departure.

  Other than Steer, the Eighth Circuit has not decided a case determining the standard to apply in determining whether a locomotive is "in use." In Angell v. Chesapeake & Ohio Ry. Co., 618 F.2d at 262, the Fourth Circuit held that a locomotive was "in use" under the Boiler Inspection Act when a machinist was assisting a maintenance area engineer in moving a locomotive from a service track to another track for assembly of the consist. The court reasoned that the Act did not contemplate exclusion of this situation because at the time of the injury the maintenance crew was moving the locomotive to another track to later pull a train. The locomotive needed no further repair or service and "in reality, had been 'okayed' by railway officials for service as contemplated by the Act." Id. The Fifth Circuit in Trinidad v. Southern

Pacific Transp. Co., 949 F.2d 187 (5th Cir. 1991), applied a "bright line" rule in a FSAA case,[2] holding that a train is not "in use" until fully assembled with all pre-departure inspections completed. Id. At 188-89.  The Fourth Circuit rejected this "bright line" rule as too rigid and simplistic and adopted instead a multi-faceted test in Deans v. CSX Transp., Inc., 152 F.3d 326, 329 (4th Cir. 1998), another FSAA case.  The Fourth Circuit test looks at a number of factors, the most important of which are the location of the train and the activity of the injured employee. Id.; see also Phillips, 190 F.3d at 289 (another FSAA case).

In a Boiler Inspection Act case, the First Circuit held that a locomotive on a "yard track" was "in use" when an engineer, walking through a locomotive cabin to get his daily inspection card, stepped on a nut on the floor of the cabin, lost his balance and suffered injury.  McGrath v. Consolidated Rail Corp., 136 F.3d at 842.  The court noted the engineer in this case had responsibility for attaching cars to the locomotive as well as operating the train.  His duties required him to perform certain inspections prior to moving the locomotive, and the incident occurred as he undertook those inspection duties.  The court found the engineer's "inspection duties were "'incidental to [the] task of operating the train as an engineer,'" Id., quoting Rivera v. Union Pacific R.R. Co., 868 F.Supp. 294, 301 (D.Colo. 1994).

More recently, district courts in two FSAA cases focused on the particular rail vehicle involved in causing the injury, rather than on the entire train in determining whether the vehicle was "in use" at the time of the injury.  Kobe v. Canadian Nat'l Ry. Co., 2007 WL 2746640 (D. Minn.);  Underhill v. CSX Transp,, Inc., 2006 WL 1128619 (N.D. Ind.).  In Underhill, an

---

[2] The "in use" language in the FSAA is identical to the language in the LIA, and the courts have applied case law interchangeably.  Phillips v. CSX Transp., Inc., 190 F.3d 285, 288n.2 (4th Cir. 1999); Steer v. Burlington Northern, Inc., 720 F.2d 975, 976 (8th Cir. 1983).

engineer injured his back while attempting to set a handbrake after separating two locomotives. The locomotive was located on a repair track at the time, and the locomotive was not designated to run that day. Nevertheless, the court found the locomotive was "in use," reasoning that FSAA is a safety measure, and Congressional intent indicates the "in use" limitation should apply to a rail vehicle only when "a rail vehicle is being serviced, inspected, repaired, maintained, or otherwise in the process of being made ready for use." Id. at 7. In Kobe, a conductor fell when a sill step on a car gave way as he and the engineer were engaged in removing the car from the train before they could resume their run. The court in Kobe followed the reasoning of Underhill and adopted a "facts-and-circumstances approach" in which it found the court should consider multiple factors "in the context of whether the usage of a vehicle, locomotive, or train is in issue." Kobe, 2207 WL 2746640, at 6. The court considered the fact that the rail car was located on the main track before the operating crew discovered it had an air leak. The crew had to move it to a side track to detach it from the train, so they could continue their run. The car was neither located in a maintenance facility nor under repair at the time of the incident. Based on these factors, the court found the rail vehicle was "in use" at the time of the injury. Id..

      In this case Bearfield and conductor Steedsman had connected two locomotives for their run to Harvey that day. The locomotives were located on a yard track, which was not the main track from which the train would depart the Enderlin station, but neither were they located in a repair or maintenance facility. Steedsman had connected several pairs of hoses on the locomotives, and Bearfield had begun carrying out his daily inspection duties on the locomotives before they could proceed to further assemble the train. The operating crew had not yet attached other cars to the locomotives, but the rules required Bearfield, as the engineer on the crew, to

7

inspect the locomotives before the crew could move them to attach to other cars.  Bearfield suffered his injury in the course of performing those duties.  The court finds Bearfield's inspection duties were "incidental to [the] task of operating the train as its engineer."  McGrath, 136 F.3d at 842 (citations omitted).  His inspection duties before moving the locomotive included checking the air hoses.  These inspection duties are not the type contemplated by the LIA's exemption from its coverage.  Also, the fact that Bearfield and Steedsman had not fully assembled the train for their trip is not dispositive.  The court "in use" determination focuses on the locomotive, as opposed to the entire train.  In this case the court finds as a matter of law that the locomotive was "in use" at the time Bearfield suffered his injury.

## Did Soo Line violate the LIA?

The "in use" determination does not in and of itself establish liability under the LIA.  In order to hold Soo Line liable, the court must find Soo Line violated the LIA's safety provisions.  This requires a finding that the locomotive, or a part or appurtenance, was not in proper condition and safe to operate.  Plaintiff argues that hoses are not supposed to blow apart, and the fact that they did so indicates the existence of a defect.  In particular, plaintiff points to the fact that the car foreman changed the gaskets in the hoses after the incident.  Soo Line, on the other hand, contends a question of fact as to the existence of a defect and the reason the hoses blew apart precludes summary judgment on the issue of a violation.  The court finds the facts are both undeveloped and disputed on this issue.  Genuine issues of material fact preclude summary judgment.

## Conclusion

The court finds the locomotives were "in use" at the time of plaintiff's injury, so the

Locomotive Inspection Act applies to this case. The court cannot determine as a matter of law on the present record whether or not Soo Line violated any safety provision of the Act. Therefore, plaintiff's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Defendant's motion for summary is **DENIED**.

Dated this 29th day of January, 2008.

*/s/   Karen K. Klein*
Karen K. Klein
United States Magistrate Judge